Rec'd 7/5/17
FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 05 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
NATHANIEL COLTER,

                            Plaintiff,

-against-

POLICE OFFICER NELSON REYES and
POLICE OFFICER LAURENCE LAVERTY,

                            Defendants.
------------------------------------------------------------- x

SHORT FORM
MEMORANDUM & ORDER

15-cv-3214 (ENV) (SMG)

VITALIANO, D.J.

      Jury selection in this case is scheduled for July 10, 2017. The parties have filed various motions *in limine*. *See* ECF Dkt. Nos. 36-41. Having considered the submissions of the parties, and the elaboration of some of their arguments at the pre-trial conference of June 27, 2017, the motions are resolved in the manner and for the reasons set forth below.

I.    Plaintiff's motions *in limine*

| Motion | Ruling |
|---|---|
| (A) Motions to exclude: (i) the domestic incident report; (ii) the SPRINT report; (iii) the Fire Department of New York ("FDNY") call report; and (iv) the pre-hospital care report. *See* ECF Dkt. No. 37 at Points I, II, and IV. | (A)(i) Plaintiff's motion to exclude the domestic incident report is granted in part and denied in part. That report was prepared by defendant Officer Reyes, based upon information provided to him by the complaining victim, Imingia Bowen, whose call to police, on the morning of October 16, 2014, led to Colter's arrest and the alleged use of excessive force at issue here.<br><br>Clearly, the report itself falls under an exception to the hearsay rule, "either as a business record under Rule 803(6), . . . |

1

or a public record under 803(8)." *See Goldstein v. Laurent*, No. 09-cv-2437, 2011 WL 3586447, at *4 (S.D.N.Y. Aug. 2, 2011) (citing *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991), and *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1251 (2d Cir. 1979)). Colter does not argue otherwise. Whether any particular statement contained in the report is admissible, however, turns on whether it was communicated to the police officers before or after Colter's arrest.

To the extent Bowen provided her statement before Colter was arrested (regardless whether Officer Reyes generated the report itself after the arrest, the contemporaneous requirement would be met), her statements would be admissible for the non-hearsay purpose of showing the circumstances known to the defendant officers at the time of the incident—rather than to prove the truth of the statements themselves—and, for that reason, would be highly relevant to the jury's determination of the reasonableness of any force that the officers used. *See generally Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their

underlying intent or motivation."). By contrast, though, if Bowen first spoke with Officer Reyes after Colter had been arrested, then her statements recorded in the domestic incident report not only would be significantly less relevant, but also would constitute hearsay not falling within any exception, since the statements could no longer be offered for the non-hearsay purpose of proving the officers' knowledge at the time of the arrest, and, moreover, the "[s]tatements of third parties who have no duty to report what they observe, even if made as part of a police report, are not admissible," unless they qualify under another hearsay exception. *Braccia v. D'Blass Corp.*, No. 08-cv-08927, 2011 WL 2848146, at *7 (S.D.N.Y. June 13, 2011) (citing, *inter alia, Parsons*, 929 F.2d at 907), *report and recommendation adopted*, 2011 WL 2848202 (S.D.N.Y. July 18, 2011); *see United States v. Bortnovsky*, 879 F.2d 30, 34-35 (2d Cir. 1989); *see also Johnson v. Lutz*, 253 N.Y. 124, 127-28, 170 N.E. 517, 518 (1930). In any event, moreover, even if post-incident statements by Bowen documented in the report could squeeze into a hearsay exception, it is virtually inconceivable that they would pass a relevance test.

If, on the other hand, Bowen gave her statement to the officers prior to Colter's arrest and, accordingly, her statements in the domestic incident report are relevant and admissible, any use of such statements at trial would be subject to the following

additional guidelines. *First*, since both sides have identified Officer Reyes and Bowen as potential witnesses, they may testify from their own recollections regarding the matters covered in the report, subject to the usual rules of relevance and prejudice balancing. If necessary, they may refer to the report to refresh their recollections. To the extent there is a complete failure of recollection, and a foundation can be laid appropriate for the introduction of excerpts from the report as past recollection recorded, those excerpts may be offered at that time. *See* Fed. R. Evid. 803(5). Any such excerpts would still need to vault the standard evidentiary hurdles of relevance, probative value, prejudice, and hearsay. *Second*, no mention may be made at trial of the references in the report to Bowen's pregnancy at the time of the incident. The inflammatory nature of the detail that she was pregnant at the time that Colter allegedly struck her greatly outweighs any minimal probative value that it might add to the equation. *See* Fed. R. Evid. 403. *Third*, Bowen's statement in the report that "[t]he police put [Colter's] head down on the hood of [the patrol] car [and] he hit his head against [the] window/glass" is excluded. That statement purports to describe events that took place during and immediately after the arrest, and, thus, would be offered by defendants only to prove the truth of the assertion that Colter caused his own injuries. While Bowen could, if she were

to take the stand at trial, offer such testimony live, that statement in the repot is hearsay that does not fall within any recognized exception. *Fourth*, if the domestic incident report is to be received in evidence, all references to Bowen's pregnancy and comment regarding Colter having hit his head on the car window shall be redacted.

(A)(ii)-(iii) Plaintiff's motions to preclude the SPRINT report and FDNY call report are denied. Those reports purportedly contain information gleaned by the 911 operator who received the emergency calls related to the incident, as well as the communications relayed over the radio to the responding police officers, those officers' requests for assistance and emergency medical services, and the responses to those requests. Colter objects to the use of these reports on the basis that they contain hearsay, including, specifically, a reference to a male carrying a firearm, which he contends would be unduly prejudicial, in light of the fact that no gun was found on him or recovered from the scene of his arrest. *See* ECF Dkt. No. 37 at 2. However, assuming a proper foundation is laid at trial, the reports would qualify for an exception from the rule against hearsay as Rule 803(6) business records. *See United States v. Chen Kuo*, No. 10-cr-671, 2011 WL 145471, at *11 (E.D.N.Y. Jan. 18, 2011) ("The court is inclined to agree in this case that the 911 recordings and

'sprint report' would qualify as business records and would thus be admissible despite their hearsay status."). And, more importantly, those portions of the reports that indicate what the defendant officers had been told prior to engaging Colter that morning to arrest him—including the reference to a reported male with a firearm—are not hearsay at all, since they will not be offered for their truth, but rather to demonstrate the circumstances known to the officers at the time of Colter's arrest. Plainly, given that the jury will be asked to decide whether the defendant officers' actions, including any use of force claimed by Colter, were "objectively reasonable . . . in light of the facts and circumstances confronting them," this evidence is far more relevant than prejudicial. *Graham*, 490 U.S. at 397. The SPRINT report and FDNY call report may, therefore, be utilized at trial—again, assuming the foundation, with respect to the FDNY call report, in particular, satisfies the relevance test.

(A)(iv) Although plaintiff did not mention the pre-hospital care report in his *in limine* motions, he did attach a copy of it to his motion papers, and, at the pre-trial conference, made clear that he objects to the use of the report as evidence at trial. The pre-hospital care report was prepared by FDNY emergency medical technicians ("EMTs") who responded to the scene of Colter's arrest, and who, now, have been noticed as possible trial

witnesses. Colter concedes, as he must, that the document is a valid business record, for purposes of the Rule 803(6) hearsay exception. Nonetheless, he argues that portions of the report are inadmissible hearsay that should be redacted.

The first target of Colter's redacting pen is a sentence indicating that he told the EMTs that he had hit his head on the police car "because he is a thug." ECF Dkt. No. 37-4 at 2. In context, it is not clear whether the words "because he is a thug" are attributed to Colter himself or to the EMT who prepared the report. If Colter said it, then it likely would come in as a party admission—*i.e.*, that he actively caused his own injury. *See* Fed. R. Evid. 801(d)(2)(A). But, if the EMT added that flourish on his own, then it is hearsay that does not obviously fit under any recognized exception. Given this ambiguity, the Court agrees that the five-word phrase "because he is a thug" should be redacted, at least for the time being.

The second sentence that Colter seeks to redact is more obviously attributable to the EMT who authored the report. It states that Colter "was verbally abusive and threatening towards [the] crew and [the police] while in the ambulance." ECF Dkt. No. 37-4 at 2. Colter contends that this statement, too, should be redacted as hearsay not falling within any exception—and the Court agrees. The defense would, presumably, offer the statement

| | |
|---|---|
| | for its truth, and it does not appear to be covered by any particular hearsay exception. Further, if it has any relevance at all, its prejudice vastly outweighs it. |
| (B) Plaintiff's motions to preclude evidence of his prior contacts with the criminal justice system, including: (i) his juvenile adjudications; (ii) his felony convictions; and (iii) his misdemeanor convictions, arrests record, prison record, and rap sheet. *See* ECF Dkt. No. 37 at Points V, VI, VIII, IX. | (B)(i) In response, defendants represent that they will not introduce any evidence or elicit any testimony concerning Colter's juvenile adjudications. Colter's motion on this score is, therefore, granted as unopposed.<br><br>(B)(ii) Colter has been convicted of three felonies: first degree attempted robbery, in 2004; first degree criminal contempt, in 2014; and as a felon-in-possession, in 2016. Defendants seek to use them for purposes of impeachment, under Rule 609(a)(1)(A), which provides that a witness's conviction for a crime punishable by a term of more than one year in prison may be utilized as impeachment, subject to the balancing test of Rule 403. If the conviction is more than ten years old, Rule 609(b) further provides that "[e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." The parties agree that, "in balancing probative value against prejudicial effect under this rule, courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the |

credibility of the witness." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 544 (E.D.N.Y. 2011).

Evaluated under this rubric, Colter's 2004 attempted robbery conviction must be excluded because, while a conviction involving theft can be probative of a witness's credibility, *see United States v. Steele*, 216 F. Supp. 3d 317, 326-27 (S.D.N.Y. 2016), the impeachment value of this 13-year-old conviction cannot be said to substantially outweigh its prejudicial impact, as required by Rule 609(b), *see United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009) ("Under Rule 609(b), 'convictions over 10 years old [should] be admitted very rarely and only in exceptional circumstances,' as 'convictions over ten years old generally do not have much probative value.'" (citations omitted)).

Next comes the 2014 conviction for criminal contempt. While a contempt conviction is not, on its face, as probative of a witness's veracity as convictions for crimes "such as . . . perjury, criminal fraud, and embezzlement," *see United States v. Khalil*, No. 05-cr-573, 2005 WL 3117195, at *2 (2d Cir. Nov. 22, 2005), it certainly carries weight as impeachment, given that it involves the disregard of the orders, rules, and proceedings of a court—not unlike the taking of an oath to tell the truth at trial. In any event, "Rule 609(a)(1) presumes that all felonies are at least somewhat

probative of a witness's propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (citation omitted). Moreover, given the apparent likelihood that Colter will be the only witness who will testify at trial that the defendant officers used excessive force in arresting him, that defendants will deny his allegations, and that there is a dearth of other eyewitnesses and documentary evidence concerning that core dispute, Colter's credibility—or lack thereof—is critically important. *See Jones v. City of N.Y.*, No. 98-cv-6493, 2002 WL 207008, at *3 (S.D.N.Y. Feb. 11, 2002). The fact that the conviction is relatively recent—and well within the ten-year window of Rule 609—tips the scales yet further toward admissibility. Further, while the defendant officers allegedly used excessive force in arresting Colter on a separate charge of criminal contempt, it does not read on the balancing as substantially prejudicial, and the jury will not be asked to decide whether the arrest itself was justified, or whether Colter did, in fact, commit criminal contempt. Most critically, of course, the conviction can be used solely for purposes of impeachment and for no other purpose. Specifically, defendants cannot use it in any way to bolster an argument that the conviction reads on the totality of circumstances and makes the amount of force used reasonable. On balance, then, the Court finds that the probative

impeachment value of Colter's 2014 contempt conviction outweighs any potential prejudicial effect, and it may be addressed for purposes of impeachment.

The balancing test produces the same result with respect to Colter's 2016 conviction as a felon in possession of a firearm. Although the impeachment value of such a firearms conviction is on the lower end of the spectrum, *see Brown*, 606 F. Supp. 2d at 313-14, it, too, is at least somewhat probative of Colter's credibility, *see Estrada*, 430 F.3d at 617. The three remaining factors all break toward admissibility. The conviction is less than a year old (and, indeed, Colter is still serving the sentence), it bears little similarity to the conduct at issue in this action, and, as already noted, his credibility as a witness is of paramount importance. Accordingly, Colter's 2016 felon-in-possession conviction also may be utilized as impeachment.

Nonetheless, "the aggregate prejudicial effect of [both] convictions must [next] be weighed against their probative value," because, "[o]nce a prior felony has been presented to the jury, the incremental value of additional convictions may be diminished." *United States v. White*, No. 08-cr-682, 2009 WL 4730234, at *5 (E.D.N.Y. Dec. 4, 2009) (citing *United States v. Washington*, 746 F.2d 104, 107 (2d Cir. 1984) (Newman, J., concurring)). Here, the collective prejudicial effect of both convictions would, indeed,

outweigh their probative value. For that reason, the Court will permit the defense to make use of only one of these two convictions—and for impeachment purposes only. *See id.* at *6. In advance of trial, defense counsel shall advise the Court and plaintiff's counsel which conviction it has chosen. Whichever of the two convictions is selected, the defense inquiry will be limited to the identification of the name of the offense, the date of conviction, and the sentence imposed. *See Estrada*, 430 F.3d at 616 ("inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by . . . Rule [609(a)(1)], subject to balancing under Rule 403" (citations omitted)).

(B)(iii) Plaintiff also moves to preclude a laundry list of other information about his prior contacts with the criminal justice system, including his misdemeanor convictions, arrests record, prison record, and rap sheet. His motion is granted, and all such information shall be excluded. None of Colter's other prior convictions involved dishonesty or a false statement, as required for admission under Rule 609(a)(2). Likewise, the smorgasbord of other misconduct that the defense has identified in their opposition papers—such as Colter's prior arrests, his multiple stints in prison, his numerous infractions in those prisons, his

|  | parole violations, and his admitted gang membership—has almost no bearing on his character for truthfulness, which rules out the possibility of admitting it under Rule 608(b). When it comes to using entries on Colter's prodigious list of crimes and misconduct—all of which are probative only for impeachment purposes—the ability to use any of these items for impeachment purposes begins and ends with the Court's ruling that only one of his two most recent felonies may be used.[1] |
|---|---|
| (C) Plaintiff's motions to preclude defendants from impeaching him with his original complaint, amended complaint, and discovery responses. *See* ECF Dkt. No. 37 at Points VII, X. | (C) Plaintiff's motions are denied because statements made by him and his legal counsel in pleadings and discovery responses constitute party admissions that defendants may utilize for purposes of impeachment. *See, e.g.*, Order, *Skinner v. City of N.Y.*, No. 15-cv-6126, ECF Dkt. No. 67 at 13-16 (E.D.N.Y. Apr. 7, 2017). Statements in Colter's operative amended complaint are binding judicial admissions, *see Official Comm. of Unsecured Creditors of Color Tile. Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003), and statements in his original complaint and discovery responses, though not binding, may nonetheless be used by defendants to impeach him, *see United* |

---

[1] If plaintiff testifies regarding alleged emotional damages, he might, thereby, open the door to the admission of additional details concerning his criminal history. *See Banushi v. Palmer*, No. 08-cv-2937, 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011), *aff'd*, 500 F. App'x 84 (2d Cir. 2012). If that occurs, the Court will take up the issue at that time.

*States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984); *Pitter v. Metro-N. Commuter R.R.*, 826 F. Supp. 2d 612, 618 (S.D.N.Y. 2011). Contrary to Colter's argument, such statements are not hearsay, but rather are admissions by a party-opponent, which are excluded from the very definition of hearsay, *see* Fed. R. Evid. 801(d)(2), and, similarly, "prior inconsistent statements offered for impeachment are, by definition, not hearsay" either, since they are not offered for the truth of the matter asserted, Order, *Skinner*, No. 15-cv-6126, ECF Dkt. No. 67 at 16 (quoting *United States v. Mergen*, 764 F.3d 199, 206 (2d Cir. 2014)). Colter further argues that his pleadings and discovery responses should be excluded because they were prepared by his legal counsel and do not contain his own "sworn statements." ECF Dkt. No. 37 at 3. That argument, too, falls flat, because "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney"—which is certainly the case here. Order, *Skinner*, No. 15-cv-6126, ECF Dkt. No. 67 at 16 (quoting *Wechsler v. Hunt Health Systems Ltd.*, No. 94-cv-8294, 2003 WL 22764545, at *3 (S.D.N.Y. Nov. 21, 2003)).

Although plaintiff's motion is denied, the Court reserves decision as to whether any specific statement should be redacted or excluded—particularly any statements pertaining to claims that Colter has voluntarily withdrawn and will not be put to the jury.

| | |
|---|---|
| | *See, e.g., Chisholm v. Sloan-Kettering*, No. 09-cv-8211, 2011 WL 2015526, at *3 (S.D.N.Y. May 13, 2011). |
| (D) Plaintiff's motion to preclude defendants from mentioning or offering evidence regarding his mental health diagnoses and treatment. *See* ECF Dkt. No. 37 at Point XI. | (D) Plaintiff's motion is granted since there is no indication that, at the time of the incident, the defendant officers had any knowledge of his alleged mental health conditions. Given the absence of such knowledge, any such evidence would not be relevant in evaluating whether any force that they used was excessive. *See, e.g., Wallace v. Mulholland*, 957 F.2d 333, 336 (7th Cir. 1992) (plaintiff's mental health history properly excluded where the defendant officers had no knowledge of it at the time of the incident). Colter is cautioned, however, that he could open the door to the admission of such evidence if he argues, for instance, that his mental health conditions were caused or exacerbated by the alleged use of excessive force during his arrest—which, given the apparent absence of any medical experts as to cause or exacerbation of any such conditions, would seem to be an impossible argument for Colter to make. |

II. <u>Defendants' motions *in limine*</u>

| Motion | Ruling |
|---|---|
| (A) Defendants' motions to preclude plaintiff from: (i) referring to defense counsel as "City Attorneys," and (ii) mentioning or offering evidence of indemnification. *See* ECF Dkt. No. 38 at Point I. | (A)(i) Plaintiff has not opposed this motion, and it is granted to the extent that plaintiff will not be permitted to refer to defense counsel as "City Attorneys." To maintain a level playing field, though, the jury will be instructed once, at the beginning of trial, that "defendants are represented by attorneys from the Office of the New York City Corporation Counsel because they are members of the New York City Police department, which is an agency of the City of New York." *See Jean-Laurent*, 840 F. Supp. 2d at 550.<br><br>(A)(ii) As for indemnification, defendants' motion is granted to the extent that plaintiff will not be permitted to refer to or suggest the possibility that the City will indemnify the defendant officers. If, however, defendants open the door by offering argument or evidence of the officers' limited financial capacity, plaintiff may move for reconsideration of this ruling. *See Anderson v. Aparicio*, 25 F. Supp. 3d 303, 314 (E.D.N.Y. 2014), *aff'd and remanded sub nom. Anderson v. Cty. of Suffolk*, 621 F. App'x 54 (2d Cir. 2015); *cf. Provost v. City of Newburgh*, 262 F.3d 146, 163-64 (2d Cir. 2001). |

| | |
|---|---|
| (B) Defendants' motion to preclude plaintiff from requesting a specific dollar amount from the jury. *See* ECF Dkt. No. 38 at Point II. | (B) The motion is denied except that plaintiff's counsel will only be permitted—solely in the context of closing argument—to state what liability and damages the evidence has established, and to submit a specific dollar amount that plaintiff contends is reasonable compensation for his loss. The Court will instruct the jury that statements by lawyers in closing are nothing more than argument. *See Edwards v. City of New York*, No. 08-2199, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). |
| (C) Defendants' motions to preclude plaintiff from eliciting evidence of other complaints to the Civilian Complaint Review Board ("CCRB") concerning defendants or other police officers who may be called to testify, any such officers' performance evaluations, and any other civil rights suits filed against such officers. *See* ECF Dkt. No. 38 at Point III. | (C) In opposition to defendants' broad motion to preclude inquiry into or documentary evidence of any CCRB complaints, performance evaluations, and other civil rights suits, Colter has indicated his desire to introduce evidence about three prior CCRB complaints that were lodged against defendant Officer Reyes, which relate, respectively, to incidents that allegedly occurred in January, July, and August of 2014. <br><br> At the doorstep, though, any inquiry into the January and August 2014 complaints must be precluded because, as Colter concedes (*see* ECF Dkt. No. 41 at 4-11), the complaints were investigated by CCRB and were found to be unsubstantiated. *See Hardy v. Town of Greenwich*, 629 F. Supp. 2d 192, 197 (D. Conn. 2009) ("The Second Circuit has held that evidence of civilian |

complaints is properly excluded on Rule 403 grounds where those complaints have been properly investigated and have been found to be unsubstantiated." (citing *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991), and *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999))). Also, while CCRB found the July 2014 complaint substantiated insofar as it concluded that Officer Reyes had used force against the complainant, evidence pertaining to it, too, must be excluded, under Rules 403 and 404(b).

Colter contends that an inquiry into these prior CCRB complaints would be appropriate, consistent with Rule 404(b), in order to prove intent, pattern, and lack of mistake on the part of the defendant officers. His "intent" argument fails, however, because excessive force claims are evaluated under an *objective* reasonableness standard, which means that the defendant officers' *subjective* "intent is irrelevant to the primary question whether excessive force was used." *Ricketts v. City of Hartford*, 74 F.3d 1397, 1411, 1414 (2d Cir. 1996) (quoting *Graham*, 490 U.S. at 396-97), *as amended on reh'g in part* (Feb. 14, 1996); *see Stephen v. Hanley*, 79 Fed. R. Evid. Serv. 875, 2009 WL 1471180, at *3, 7 & n.2 (E.D.N.Y. May 21, 2009). Nor can Colter's "pattern" argument withstand scrutiny, since none of the three CCRB complaints involved a factual scenario analogous to the case at bar. *See Ricketts*, 74 F.3d at 1414 ("[W]e would

consider it an abuse of discretion to admit [similar act] evidence if the other act were not sufficiently similar to the conduct at issue." (second alteration in original) (citation omitted)). Certainly, the prior complaints do not share any unusual characteristics with the current case, or otherwise reveal a unique scheme on the part of the defendant officers. *See Berkovich*, 922 F.2d at 1022-23 (to establish a pattern of conduct, "the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme'" (citation omitted)). Further, as the defendant officers have not asserted "accident" or "mistake" as a defense, Colter's argument on that front must be rejected, too. *See Ricketts*, 74 F.3d at 1414.

Anticipating the Court ruling against his Rule 404(b) arguments, Colter has also argued, in the alternative, that Rule 608 permits him to cross-examine Officer Reyes about the July 2014 incident and its subsequent investigation by CCRB, during which he allegedly offered inconsistent accounts of whether and to what extent he had used force against the complainant. But, even assuming, *arguendo*, that this incident and investigation were probative of Officer Reyes's veracity—a doubtful proposition, given the apparent absence of any finding or even a charge by CCRB or any other body that he perjured himself or made a false statement—Colter's proposal to cross-examine

| | Officer Reyes about the matter must be rejected, under Rule 403. To permit inquiry into this unrelated complaint and subsequent investigation would be to allow plaintiff's counsel to conduct an entirely separate trial within a trial. Any impeachment value that plaintiff's counsel might be able to squeeze out of such a mini-trial would be overwhelmed, not only by the risk of undue prejudice to Officer Reyes, but also by the inevitable confusion that would ensue and the diversion of the jury's focus away from the narrow, straightforward factual dispute at the heart of this case, which is: whether, on the morning of October 16, 2014, Officer Reyes and Officer Laverty used excessive force in the course of arresting Colter. For these reasons, the motion is granted. |
|---|---|

So Ordered.

Dated: Brooklyn, New York
      July 4, 2017

                                      /s/ USDJ ERIC N. VITALIANO
                                          ERIC N. VITALIANO
                                          United States District Judge